**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | Civil Case No. 04-40132 |
| Plaintiff Intervenor, | ) | Judge Sean F. Cox |
| v. | ) ) | |
| CINTAS CORPORATION, | ) ) | Magistrate Judge R. Steven Whalen |
| Defendant; | ) | |

**DEFENDANT'S RESPONSE BRIEF IN SUPPORT OF PROPOSED DISCOVERY PLAN**

Pursuant to this Court's order dated January 30, 2014 (Dkt. 1112), Defendant Cintas Corporation ("Cintas") submits the following response to the EEOC's Brief Regarding Scheduling (filed March 3, 2014) (Dkt. 1114) ("EEOC Br."), and in further support of its proposed discovery plan, which is attached to Cintas's brief of March 3, 2014 (Dkt. 1115) ("Cintas Br.") as Exhibit 1.

**I.      Introduction**

The EEOC does not—and cannot—address fundamental flaws in its position:

- It continues to maintain that it can bring a claim on behalf of more than 1300 "unsuccessful female applicants for the SSR position" at Cintas (EEOC Br. at 6), even though it admitted to the Sixth Circuit that only 125 (at most) of those females have claims (Cintas Br. at Ex. 3 at 9-10). The EEOC never reconciles this admission—which it made to convince the Sixth Circuit that it should be allowed to pursue a "pattern or practice" case—with its current position.

- It persists in arguing that it need not disclose the claimants on whose behalf it seeks relief—even though Magistrate Judge Scheer already ordered it to do so, in an opinion (Dkt. 735) that: (1) the EEOC never appealed; (2) was issued even though the EEOC argued—just as it does now—that it did not need to disclose the identity of claimants

1

prior to phase 1 of a "pattern or practice" trial; (3) specifically refers to disclosing claimants prior to the same two-phase trial that will occur here; and (4) has been correctly interpreted by at least one other district court in the Sixth Circuit as applying to a "pattern or practice" case.  The EEOC never explains why it should be excused from complying with a non-appealable order.

- It fails to address Supreme Court precedent holding that punitive damages must bear some relation to compensatory damages and continues to maintain that a phase 1 jury can award punitive damages before Cintas has a chance to present any defense concerning individual applicants and before any compensatory damages have been awarded.

In sum, the EEOC seeks to hurry towards trial without disclosing the claimants on whose behalf its seeks relief or allowing additional discovery, and to then seek a punitive damage award before any individual victims have been identified.  Even if this approach did not defy a previous Court order and the EEOC's own admissions on appeal, while ignoring Supreme Court precedent, it would still place Cintas in an impossible and unfair situation.  The Court should reject the EEOC's arguments and adopt Cintas's proposed scheduling order.

## II.     Argument

### A.     The EEOC Should Identify Individual Claimants and Discovery Regarding Newly Identified Claimants and Other Issues Should Be Permitted

Pursuant to the Court's instructions, Cintas separately briefed the issues of "What discovery is needed during Phase 1" and "Whether, and when, the EEOC should have to identify the claimants on whose behalf it seeks relief." (Dkt. 1112 at 2.)  The parties' briefing makes clear that these two issues are intertwined: the contours of additional discovery required before phase 1 of the trial can only be determined <u>after</u> the EEOC complies with Magistrate Judge Scheer's prior order and discloses the identifies of the claimants on whose behalf it seeks relief.

The EEOC's position that it can immediately proceed to trial should be rejected for the following reasons.

### 1. The Sixth Circuit's opinion does not support the EEOC's position.

The EEOC suggests that the Sixth Circuit in this case held that *Teamsters* envisions "a bifurcation of both discovery and trial" (EEOC Br. at 2) and that the court issued some sort of a "mandate" stating that the EEOC did not have to identify claimants (*id.* at 7). But on appeal the EEOC admitted to the Sixth Circuit that—at most—Cintas hired 125 fewer women than would be expected if there were no discrimination. (Cintas Br. at Ex. 3 at 10.) It used this argument to convince the court that this case would not become a lawsuit involving more than 1300 applicants. (*Id.* at 9-10.) These judicial admissions alone should resolve the issue and mean that the EEOC cannot—as it now seeks to do—assert claims on behalf of more than 1300 applicants.

Moreover, the Sixth Circuit did not—and could not—rule on the issue of whether those claimants should be identified. That issue was decided by Magistrate Judge Scheer, and never appealed by the EEOC. (Dkt. 735.) This also should resolve the issue.

The Sixth Circuit also made clear that this is still a §706 case, and that the *Teamsters* framework is "simply a different standard of proof" than *McDonnell Douglas*. *Serrano*, 699 F.3d at 896. The EEOC brings this §706 action to seek relief on behalf of aggrieved persons. §706(f)(1). The case relied on by the EEOC repeatedly on appeal—*General Tel. Co. v. EEOC*, 446 U.S. 318 (U.S. 1980)—was based on §706's grant to the EEOC of "authority to bring suit in its own name for the purpose, among others, of ***securing relief for a group of aggrieved individuals***" (*id.* at 324) (emphasis supplied). Nothing in the Sixth Circuit's opinion states or even suggests that—when the EEOC moves to secure compensatory and punitive relief on behalf of a group of allegedly aggrieved individuals—it is excused from identifying those individuals prior to trial.

3

The Sixth Circuit was clear that this Court maintained the discretion to govern discovery. It acknowledged that its decision about whether the EEOC could proceed under *Teamsters* would "matter[] greatly to the structure of the proceedings as they move through discovery and eventually to trial." *Serrano*, 699 F.3d at 893. The court further found that "although it is likely in light of our pattern-or-practice ruling that a new period of discovery will be necessary, we defer to the district court's judgment on this matter in the first instance." *Id.* at 900. To the extent these statements suggest anything about how discovery should proceed, they suggest that additional discovery is likely required prior to phase 1.

The Sixth Circuit also vacated an order denying the EEOC's motion to compel Cintas to produce unredacted hiring material. *Id.* The EEOC argued on appeal that—if the Sixth Circuit overruled this Court and turned this case into a "pattern or practice" case—it would need this information to help prove its claims in phase 1 of a trial. (*See* Ex. 1 (Excerpts From March 16, 2011 EEOC Brief on Appeal at 95-96)) ("If the §§706/707 or complaint amendment rulings are reversed, EEOC plainly would be entitled to the unredacted information because contacting the other women could help EEOC prove there was a larger pattern or practice of discrimination."). It further argued that it was Cintas's failure to produce the unredacted applications that led to the EEOC identifying only 13 claimants when this was a *McDonnell Douglas* action. (Cintas Br. at Ex. 3 at 10, n.14.) Now that the EEOC has this information—which it claimed to need to prove that there was a "pattern or practice" of discrimination and to identify alleged victims—it now asserts that it will not use it to identify those victims, and that Cintas is not permitted to take any further discovery related to the newly-produced information. Nothing in the Sixth Circuit's decision supports such a result; if anything its decision to compel production of new information suggests that it contemplated—as Cintas proposes—that the EEOC would have an opportunity

4

identify additional claimants and that—if there were new claimants—additional discovery related to those additional claimants would follow.

### 2. If the EEOC discloses additional claimants, additional discovery should be permitted.

Bifurcation decisions are left to the discretion of the Court. *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 481 (6th Cir. 2007). The decision to bifurcate discovery must therefore turn on whether the specific facts in this case mean that bifurcation would be beneficial to judicial efficiency or otherwise. *Serrano*, 699 F.3d at 900; *see also EEOC v. Celadon Trucking Servs.*, 2013 U.S. Dist. LEXIS 55506, *4 (S.D. Ind., Case No.1:12-cv-0275, Apr. 18, 2013) ("[C]ourts … consider the issue of bifurcation on a case-by-case basis."). But the relevant facts won't be clear until the EEOC discloses the claimants on whose behalf it seeks relief; until then it is not possible to determine whether it would be efficient to defer damage discovery on some or all of the individuals that the EEOC alleges were aggrieved.

If the EEOC would concede that its claims are limited to the 13 individuals it ultimately identified when this was a *McDonnell Douglas* case, then very little if any individual discovery would be needed prior to phase 1 of trial. If the EEOC identifies 125 new claimants whom Cintas has never deposed, then significant additional discovery will be needed, for all of the reasons set forth in Cintas's brief. If the number of claimants is somewhere in between those two numbers, then the amount of additional required discovery will depend on the claimants identified. If the EEOC is allowed to persist in claiming that it seeks relief on behalf of hundreds of claimants—then even more additional discovery is needed. Given that the EEOC will not even limit its claims to a specific timeframe (much less identify the individuals on whose behalf it will seek relief), Cintas must assume for now that at least 12 months of additional discovery is needed. Cintas's position could change once the claimants are identified.

The EEOC claims no additional discovery prior to phase 1 is needed—and presumably that it should not have to identify claimants—because Cintas (when it previously sought attorney fees) argued that it had prepared "as if" the EEOC had asserted a pattern or practice claim. (EEOC Br. at 5.) This is misleading. Cintas told the Court that it prepared to defend a "pattern or practice" case "until the Court in February 2010 confirmed that the EEOC had not pled a pattern or practice claim and expressly limited the EEOC to pursuing individual claims under the *McDonnell Douglas* framework" (Dkt. 943, n.2)—which was before discovery closed.

Moreover, Cintas was forced to prepare its "pattern or practice" defense before the EEOC was ordered to identify the claimants on whose behalf it sought relief. Ironically, the EEOC points to the very motion Cintas filed to compel the identification of those claimants as supposed proof that Cintas prepared for a "pattern or practice" case. (EEOC Br. at 5, n.11 *citing* Dkt. 702.) That is the very same motion that led to Magistrate Judge Scheer's Order (Dkt. 735) which—the EEOC now claims—had nothing to do with a "pattern or practice" case and no longer requires it to disclose claimants (EEOC Br. at 7). But as the EEOC's position now makes clear, that motion was argued and briefed when the case was still potentially a *Teamsters*/"pattern or practice" case (and the order itself refers to a bifurcated "pattern or practice" trial)—and Magistrate Judge Scheer has already ordered the EEOC to do what it now says it will not do. When the EEOC then attempted to comply with the order, it was a *McDonnell Douglas* case. Now that this is definitely a *Teamsters* case, Cintas should not be forced (again) to prepare in the dark, with no information about the claimants on whose behalf the EEOC seeks relief, especially where EEOC has already been ordered to disclose that information. In discovery, Cintas should—as Magistrate Judge Scheer said—be able to "quite reasonably … focus its attention upon the specific women on whose behalf the EEOC intends to seek damages." (Dkt. 735 at 2-3.)

The identity and discovery of the claimants will be highly relevant in phase 1. When this was a *McDonnell Douglas* case, as the Court's previous summary judgment orders show, Cintas uncovered information highly relevant to the issue of whether it engaged in discrimination as a matter of routine procedure. *See*, *e.g.*, Dkt. 924 at 8 (quoting claimant Tracy Gerke-Williams testifying about her interview and saying that she had no reason to believe that Cintas declined to hire her due to her gender).[1] Cintas was able show—through evidence that included hiring documents and the claimant's testimony—that it had legitimate, nondiscriminatory rationales for not hiring the individuals on whose behalf the EEOC asserted claims. (*See*, *e.g.*, Dkt. 924 at 13-14.)[2] It was also able to show—as a matter of law—that the EEOC could not prove that the rationales were a pretext for gender discrimination. (*See*, *e.g.*, Dkt. 924 at 20.)[3] But the 13 claimants on whose behalf the EEOC previously asserted claims may be just a small subset of the claimants in the EEOC's "pattern or practice" case. If Cintas can uncover similar evidence for other claimants, there would be more compelling proof that discrimination was not—as the EEOC must prove in phase 1—Cintas's "standard operating procedure" (*Serrano*, 699 F.3d at 896). At the very least, such evidence would counter admissible anecdotal evidence the EEOC sets forth (if there is any). If the EEOC does not identify the claimants on whose behalf it seeks relief, Cintas will be forced to present such evidence and seek discovery from all 1300 applicants (and any efficiency gained would be lost). Under Cintas's approach, it can focus these efforts on the most relevant applicants.

---

[1] *See also*, *e.g.*, Dkt. 930 at 10 (quoting similar testimony from Gina Comiska); Dkt. 933 at 7 (quoting testimony concerning salary requirements of Lori Schelske and reasonableness of Cintas not hiring her as a result of those requirements); *and* Dkt. 934 at 9, 11-12 (quoting testimony from Kari Denby Kremhelmer concerning her low qualifications for the SSR position, her interview, and confirming that until this litigation she had no reason to believe Cintas declined to hire her due to her gender).

[2] *See also*, *e.g.*, Dkt. 930 at 15-16; Dkt. 933 at 13-14; Dkt. 934 at 17.

[3] *See also*, *e.g.*, Dkt. 930 at 21-22; Dkt. 933 at 20; Dkt. 934 at 23-24.

The EEOC dismisses these claims by arguing "that the information is already in Cintas's hands as to why it made the hiring decisions that it did." (EEOC Br. at 4-5.)  The EEOC also notes that the Sixth Circuit stated that "after-the-fact evidence of [claimant's] dishonesty" should only be considered during the liability stage (*Serrano*, 699 F.3d at 903).  But Cintas is still entitled to take discovery concerning the circumstances surrounding the hiring decisions that allegedly involved discrimination.  While Cintas knows that it made hiring decisions for legitimate reasons, the EEOC claims otherwise, and Cintas should be able to defend itself by uncovering evidence showing (among other things) that the alleged victims of this discrimination did not believe Cintas denied them employment because of their gender.  Even if the Court had not already ordered the EEOC to disclose information about the claimants so that Cintas could take discovery—and even if the EEOC had not already admitted that there are (at most) only 125 valid claimants—fundamental fairness would still require the EEOC to disclose the information Cintas seeks.

### 3. The EEOC does not identify the burdens that it will face under Cintas's proposal or any specific benefits from its proposal.

The EEOC does not dispute that bifurcation must be determined on a case-by-case basis.  It cites cases in other districts where—for various reasons—the court bifurcated discovery and did not allow any individual discovery prior to phase 1.  But in those cases—unlike here—the plaintiff had identified the claimants with possible claims.  *See EEOC v. Rent-A-Center, Inc.*, (Doc. #93, Case No. 2:99-cv-02427; W.D. Tenn., Feb. 20, 2002) at 1-3 (EEOC identified all potential class members prior to close of discovery); *Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 655 (D. Col.. 1980) (identifying class as persons involved in a specific helicopter crash).  In *Groth v. Robert Bosch Corp.*, 2008 U.S. Dist. LEXIS 52328, at *2 (W.D. Mich., Case No. 1:07-cv-962, Jul. 9, 2008), the court held—as the EEOC states—that discovery from absent class

members is not allowed as a matter of course. But the court held further that such discovery is allowed upon a showing that the discovery sought is necessary. *Id.* at *3. In that case, the class had been identified and the defendant had started seeking discovery when the plaintiffs sought a protective order and the issue of whether the discovery was necessary was before the court. *Id.* at *1. Unlike *Martin*, this case is not—as the EEOC points out—governed by Rule 23. But if it was, or if the Court wanted to perform a similar analysis in order determine whether discovery from some or all of the applicants is necessary, it could only do so after the EEOC identified the applicants on whose behalf it seeks relief.

Nor is this case like *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059 (C.D. Ill. 1998)—also cited by the EEOC (EEOC Br. at 6-7). That case concerned a hostile work environment—and the court found that if the EEOC successfully proved in phase 1 that the company engaged in a pattern or practice of creating a hostile environment, then all women employed by the defendant were presumptively victims. 990 F. Supp. at 1079. Here the EEOC admits that only a fraction—at most 125 out of more than 1300—of the class it purports to represent are even potentially victims of discrimination. The EEOC should identify those alleged victims.

The EEOC also acknowledges—as it must—that some courts "allow[] individual discovery before the first jury stage." (EEOC Br. at 4.) But it then claims—without citation—that "none of those cases involved hiring on the same scale at issue in this case" (*id.*), and suggests this is some sort of general rule. It is not. *EEOC v. New Indianapolis Hotels, LLC*, 2012 U.S. Dist. LEXIS 12546 (S.D. Ind. Feb. 1, 2012) involved 100 applicants in a case based partially on failure-to-hire claims (*id.* at *4, n.2)—which is approximately the size of the alleged hiring shortfall here. The court also refused to bifurcate discovery in *EEOC v. Ruby Tuesday,*

9

*Inc.*, (Doc. #41, Case No. 2:09-cv-01330; W.D. Pa., Dec. 27, 2011)—which involved an alleged failure to hire applicants across six locations over four years (*see* Doc. #1, Case No. 2:09-cv-01330; W.D. Pa., Sep. 30, 2009). The court reached the same conclusion in *EEOC v. Sedita*, 1988 U.S. Dist. LEXIS 2024, at *3-5 (N.D. Ill., Case No. 87 C 2790, Mar. 2, 1988)—a case that involved an alleged failure to hire men at 15 different women's health clubs (*EEOC v. Sedita*, 816 F. Supp. 1291, 1292 (N.D. Ill. 1993)). Nothing in these cases suggests they were narrower in scope than this case—although this will be difficult to determine until the EEOC discloses the claimants on whose behalf it seeks relief.

Other than vague statements about efficiency, the EEOC does not point to any specific burden it will face if it is required to identify claimants. It argues that Cintas has already conducted extensive discovery (EEOC Br. at 5-6)—neglecting again to mention that Cintas conducted that discovery before the EEOC identified any claimants, and refusing to concede that its claims will be limited to those applicants who were the subject of that discovery. It purports to be worried about the burden on the parties if the claimants it may or may not identify are deposed. (*Id.* at 3.) But Cintas will have to take these depositions and it would have no incentive to depose claimants unnecessarily. It will depose claimants if there is reason to believe their testimony would be relevant to defending the EEOC's claim. *See New Indianapolis Hotels, LLC*, 2012 U.S. Dist. LEXIS 12546, at *4, n.2 (denying request for bifurcation where EEOC purported to worry about depositions of 100 claimants before phase 1 but where the defendant was not "troubled by the prospect" of that many depositions).

The EEOC also argues that deferring disclosure and discovery of claimants until after phase 1 means "the parties are more likely to settle the case with respect to the circumstances of particular individuals." (EEOC Br. at 3.) But to get to that point the EEOC proposes a trial

where its own case-in-chief will last three weeks (*see id*. at 11-12)—meaning that trial in total could last six weeks or more, all before the EEOC would even disclose the potential scope of Cintas's liability. Disclosing that information now—and allowing Cintas to take discovery of these allegedly aggrieved individuals—will allow Cintas to evaluate this case <u>before</u> trial takes place and increase the chance of pre-trial settlement. *See Ruby Tuesday*, Doc. #41 at 2-3 (rejecting similar argument because the EEOC's proposed approach would prevent the defendant from being able "to ascertain for itself the potential for liability and the magnitude of damages that could be imposed [and] almost certainly would foster an aura of distrust and constant dissention among the parties and counsel and lead to protraction of the litigation, an inability to explore amicable resolution at an appropriate juncture and additional delay"); *Sedita*, 1988 U.S. Dist. LEXIS 2024, at *3 ("Settlement … is much less likely if the parties do not have the damage information before them during negotiations.").

If the EEOC were truly concerned with resolving this case, it would voluntarily disclose the claimants on whose behalf it will seek relief, rather than force Cintas to endlessly face a shifting and unknown number of claimants. Given that the EEOC refuses to take this reasonable position, the Court should compel it to do so and should adopt Cintas's proposed scheduling order.

### B. Punitive Damages Should Only Be Decided If Phase 2 of Trial Occurs

The EEOC maintains its position that the jury in phase 1 should determine "Cintas's liability for, and the aggregate amount, of punitive damages… ." (EEOC Br. at 7.) As Cintas has already shown, this position is untenable. Punitive damages must bear some relationship to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) *citing BMW of North America v. Gore*, 517 U.S. 559 (1996). Because compensatory damages will not be determined unless there is a phase 2 of trial, and even the identity or number of the

11

actual victims (if any) cannot be established until phase 2, a verdict in phase 1 of a "pattern or practice" trial cannot have any relationship to compensatory damages.  Therefore, a punitive damage award cannot be based on "a finding that the defendant engaged in a pattern or practice of discrimination."  *Allison v. Citgo Petroleum Co.*, 151 F.3d 402, 417 (5th Cir. 1998).  As set forth in Cintas's brief, while the Sixth Circuit has not ruled on these issues in the precise context of an EEOC "pattern or practice" claim, it has cited *Allison* and adopted the same underlying principles.  *See Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 646-49 (6th Cir. 2006).

The holding in *Tisdale v. Fed. Express Corp.*, 415 F.3d 516 (6th Cir. 2005) is irrelevant.  The court there did not—as the EEOC suggests—make any finding about the timing of a punitive damage award in a "pattern or practice" case.  (EEOC Br. at 9.)  Rather, the court held that a single plaintiff in a Title VII case can recover punitive damages where it receives back pay, but does not receive compensatory damages.  *Tisdale*, 415 F.3d at 534.  A Title VII case is unique because the statute permits recovery of back pay as an equitable matter, and therefore the statute allowing recovery for compensatory damages excludes back pay from the definition of compensatory damages.  *Id. citing* 42 U.S.C. §1981(a)(b)(2).  Therefore, in that case, a plaintiff who was awarded $15,000.00 in back pay and no other damages could still recover $100,000.00 in punitive damages.  *Id.* at 525.  But in this case, even under the EEOC's proposal, back pay will not be awarded until phase 2, and therefore punitive damages cannot be awarded until phase 2 so that they bear some relationship to any back-pay award.

The *Tisdale* court did cite cases in other circuits finding that—even in Title VII cases where there was no compensatory damage or back pay award—a court could still award punitive damages.  *Id.* at 534-535.  But this is only because the "the statutory caps on punitive damages,

12

42 U.S.C. § 1981a(b)(3), ensure against limitless awards in cases of insubstantial harm." *Id.* Those caps limit damages to $300,000 <u>per victim</u> for companies with more than 501 employees. 42 U.S.C. § 1981(a)(b)(3). Before phase 2 of the trial, it will be impossible to determine if there are any victims—much less the number of victims—such that the cap would be effective in this case. For this reason one other court in an EEOC "pattern or practice" cases rejected the same argument that the EEOC makes here:

> The EEOC attempts to distinguish *State Farm* … by asserting that the statutory cap of $300,000 per plaintiff acts to "cabin" the jury's discretion to award excessive punitive damages. The Court is unpersuaded because, under the EEOC's scheme, the amount of punitive damages is decided before the actual number of victims is determined. The Stage I jury will be asked to impose a punitive damages award of up to $300,000 for each of the 20,000 potential victims, for a total potential punitive damages award of $6 billion. Yet, whether 20,000 or merely 200 victims actually suffered harm because of the discriminatory policy will not be determined until Stage II. Because the number of actual victims remains only hypothetical at the conclusion of Stage I, the $300,000 cap per victim does not serve to "cabin" the jury's discretion at all.

*EEOC v. Sterling Jewelers, Inc.*, 788 F. Supp. 2d 83, 90 (W.D. NY 2011). The same reasoning applies with even more force here. The EEOC could take the position that the Title VII caps of $300,000—applied to 1300 applicants—"limit" the punitive damage award to $390,000,000.00—even though in this case (unlike in *Sterling Jewelers*) the EEOC admits that there cannot be more than 125 victims, and even though Cintas maintains that it can and will successfully show that the EEOC is unable to identify any victims as all (just as it did when this was a *McDonnell Douglas* case).

      The EEOC cites several cases with general statements about punitive damages (EEOC Br. at 8), but very few cases concerning EEOC Title VII claims—and with good reason. As Cintas demonstrated in its brief, the majority of courts to have considered the issue have—like the *Sterling Jewelers* court—applied Supreme Court precedent and held that the EEOC cannot

pursue punitive damages until phase 2. (Cintas Br. at 17-18.) Furthermore, even the decisions that the EEOC does cite do not support its position that the *amount* of punitive damages should be decided in phase 1. In *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165 (D.N.M. 2012) (EEOC Opp. at 9, n.19) the court required the EEOC to make additional showings for each individual claimant in phase 2 before any punitive damage amounts could be determined or awarded. The phase 1 jury was only permitted to consider the limited issues of whether the defendant acted "with malice or reckless disregard of the aggrieved employees' federally protected rights." *Id.* at 1178. Only at phase 2 was the availability and amount of monetary relief considered (*id.* at 1179)—and the court was clear that, if the phase 1 jury determined that the defendant was malicious or reckless—"then the aggrieved employees are eligible for punitive damages ***upon additional individual showings***" (*id.* at 1178) (emphasis added). The other cases cited by the EEOC also do not support an aggregate punitive damage award that is completely untethered to compensatory damages—as the EEOC seeks here. *See EEOC v. Dial Corp.*, 259 F. Supp. 2d 710 (N.D. Ill. 2003) (adopting a multi-phase approach as described in Cintas's brief at 18-19) *and EEOC v. Outback Steak House of Fla., Inc.*, 576 F. Supp. 2d 1202, 1206 (D. Col. 2008) (citing *Dial* and permitting phase 1 jury to consider only eligibility for punitive damages).[4]

Even these cases fly in the face of the requirement that punitive damages be tied to compensatory damages. Regardless of the outcome of phase 1, Cintas will be able to prove that every hiring decision it made during the relevant timeframe was made for non-discriminatory reasons. It is inconsistent with the policy set forth in *State Farm* to allow the EEOC to seek

---

[4] The EEOC also confusingly claims that *Kolstad v. American Dental Assoc.*, 527 U.S. 526 (1999) is controlling authority. Yet that case does not saying anything about when punitive damages should be applied in "pattern or practice" cases. Nor does it suggest that the reasoning in *State Farm* (which was decided four years later) is inapplicable in "pattern or practice" cases. The case concerns a showing that the plaintiff must make to prove punitive damages. The Court's holding that plaintiffs must meet a "another, higher standard" to receive punitive damages (*id.* at 534) only shows that it is even more important that the EEOC only be allowed to make such a showing once Cintas has been able to fully defend itself in phase 2 of trial.

14

punitive damages before even one victim has been identified. The EEOC's position is all the more incredible given that it does not even propose to identify the <u>alleged</u> victims of discrimination prior to phase 1. It apparently expects Cintas to prove that it did not act with malice or in reckless disregard for the rights of individuals before it will even identify those individuals to Cintas. This approach would defy Supreme Court precedent, which is why district courts have consistently rejected it. Punitive damages should be determined in phase 2.

### III.    Additional Expert Discovery Should Be Permitted.

As set forth in Cintas's brief, additional expert discovery—and motion practice—should be permitted to address the changed legal landscape of the case. This is particularly true given that Cintas's rebuttal report—while it addressed hiring statistics out of an abundance of caution—was finalized and filed after the Court ordered the EEOC to proceed under the *McDonnell Douglas* framework. (Dkt. 833.) Moreover, decisions concerning motions to exclude experts were made after that decision. The Court should permit additional expert disclosures and motions that focus on the showing the EEOC must now make, and to address any additional information disclosed in fact discovery.

### IV.    Conclusion

For the reasons stated here and in its initial brief, Cintas asks the Court to adopt the Proposed Scheduling Order attached to its brief as Exhibit 1.

Respectfully submitted,

/s/ Gregory M. Utter
Gregory M. Utter
Rachael A. Rowe
Benjamin G. Stewart
Keating Muething & Klekamp, PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6540
Fax: (513) 579-6457

*Attorneys for Defendant, Cintas Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that true and exact copies of the foregoing were served on all counsel of record via the Court's CM/ECF filing system this 17th day of March 2014.

/s/ Gregory M. Utter
Gregory M. Utter

5362827